IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED
MAY 17 2023
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**SING FUELS PTE LTD.,**

        Plaintiffs,

v.                                                 **CIVIL ACTION NO. 4:20-cv-58**

**M/V LILA SHANGHAI (IMO 9541318),**

        Defendant.

*MEMORANDUM OPINION*

Before the Court is M/V LILA SHANGHAI's ("Defendant") Motion For Post-Judgment Anti-Suit Injunction ("Motion") requesting a post-judgment injunction prohibiting Sing Fuels ("Plaintiff") from taking any action against Defendant on claims arising from the July 2019 fuel supply in South Africa. ECF Nos. 64, 65. Defendant filed the Motion on February 7, 2023 and Plaintiff responded in opposition on February 21, 2023. ECF No. 64; ECF No. 70. A hearing was held before this Court on February 23, 2023. Having heard from both parties and reviewed the parties' filings, this matter is ripe for judicial determination. After considering the filings, the evidence heard at the hearing, and the law of this Circuit, the Court **GRANTED** the Motion for Post-Judgment Anti-Suit Injunction. ECF No. 72. Now, the Court issues the instant opinion to further explain the basis of the Order.

**I. FACTUAL AND PROCEDURAL HISTORY**

On April 22, 2020, Plaintiff filed a Complaint. ECF No. 1. The Complaint alleged that the Defendant was liable for $532,312.48 for a supply of fuel in South Africa in July 2019. *Id.* at 3. On April 24, 2020 this Court issued a Warrant of Arrest. ECF No. 6. Defendant's Vessel, Autumn Harvest, posted a $750,000 letter of undertaking to substitute for the vessel, and agreed to appear, file a claim, and defend the suit. ECF No. 10 at 1. Defendant answered the complaint on June 1,

2020. ECF No. 15. On February 23, 2021, this Court held a bench trial. ECF No. 41. On April 20, 2021, this Court issued a Memorandum Opinion and Order explaining that Defendant sufficiently demonstrated no privity of contract to hold Defendant liable for a maritime lien. ECF No. 45. On May 20, 2021, Plaintiff appealed the decision. ECF No. 48. The Court of Appeals for the Fourth Circuit ("Fourth Circuit") published a decision affirming the ruling of this Court. *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263 (4th Cir. 2022).

On December 5, 2022, Plaintiff sent a notice to Defendant reiterating the same claim already litigated during the bench trial and appeal. ECF No. 64 at Exhibit 1. Plaintiff issued the same demand letter previously given to Defendant. *See* ECF No. 31 at Exhibit 7. In a letter to Plaintiff on December 7, 2022, Defendant explained that this claim had already been fully litigated and decided by this Court. ECF No. 64 at Exhibit 2. Nevertheless, Plaintiff continues to insist that its "claim will be pursued until the Vessel is arrested in a favorable jurisdiction, and payment is received in full." *Id.* at Exhibit 3. Plaintiff further stated that "the Vessel is currently en route [to] Mozambique, which is a jurisdiction which entitles [Plaintiff] to enforce the unpaid claim against the Vessel." *Id.* at Exhibit 1.

Defendant filed the Motion on February 7, 2023 and Plaintiff responded in opposition on February 21, 2023. ECF No. 64; ECF No. 70. A hearing was held before this Court on February 23, 2023. ECF No. 71. On February 23, 2023, the Court issued an order granting Defendant's Motion for Post Judgment Anti-Suit Injunction. Order Granting, ECF No. 72. Now, the Court issues the instant Opinion to further explain the basis of the Order.

## II. LEGAL STANDARD

The Fourth Circuit has declined to adopt a test regarding when a district court may impose an anti-suit injunction after a judgment has been entered. *BAE Sys. Tech. Sol. & Servs., Inc. v.*

2

*Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 479 (4th Cir. 2018). Other circuits have outlined at least two approaches for determining if a foreign anti-suit injunction is warranted: the "liberal" test and the "conservative" test. *Id.*[1] Both weigh factors favoring an injunction against the effect of an injunction on international comity. *Id.* The principal difference is that the liberal approach accords less weight to international comity concerns. *See Allendale Mut. Ins. Co. v. Bull Data Sys.*, Inc., 10 F.3d 425, 431 (7th Cir. 1993). But international comity remains a significant consideration, even in courts endorsing the liberal approach. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990–91, 994 (9th Cir. 2006) (under the liberal standard, a court must perform a "detailed analysis" to determine whether the impact on international comity would be "tolerable").

While a district court with jurisdiction over the parties may prohibit them from proceeding with a lawsuit in a foreign country, the court should use that power "sparingly." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012) (internal quotation marks and citation omitted). Analysis of the propriety of a foreign anti-suit injunction is a three-step process under either of the approaches. First, the court resolves the threshold considerations of whether the parties and issues are the same. The court considers whether "(1) 'the parties are the same in both [the foreign and domestic lawsuits],'" and whether "(2) 'resolution of the case before the enjoining court is dispositive of the action to be enjoined.'" *Canon Latin Am., Inc. v. Lantech* (CR), S.A.,

---

[1] The liberal approach has been adopted by the Fifth Circuit, *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996), and the Ninth Circuit, *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855–56 (9th Cir. 1981). In addition, the Seventh Circuit has pronounced itself "incline[d] toward" the liberal view. *Philips Med. Sys. Int'l v. Bruetman*, 8 F.3d 600, 605 (7th Cir. 1993). The conservative approach has been adopted by: the First Circuit, *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 16 (1st Cir. 2004), the Third Circuit, *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods.*, 310 F.3d 118, 126 (3d Cir. 2002), the Sixth Circuit, *Gau Shan Co. v. Bankers Trust Co.*, 956 F.2d 1349, 1355 (6th Cir. 1992), the Second Circuit, *China Trade and Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987), and the D.C. Court of Appeals, *Laker Airways Ltd. V. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984).

508 F.3d 597, 601 (11th Cir. 2007) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004)); *see E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th Cir. 2006) (same). This standard also has been stated as "whether parallel suits involve the same parties and issues." *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 18 (1st Cir. 2004) (same).

Second, the court assesses the effect of the foreign suit if it were to proceed. The Courts of Appeals that have discussed this assessment agree that the district court should consider the following four factors: "whether the parallel litigation would '(1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; [or] (4) prejudice other equitable considerations ....'" *Software AG, Inc. v. Consist Software Sols., Inc.*, 323 Fed.Appx. 11, 12 (2d Cir. 2009) (*quoting Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (alterations, ellipses, and internal quotation marks omitted)); *see In re Unterweser Reederei Gmbh*, 428 F.2d 888, 896 (5th Cir. 1970), aff'd on rehearing en banc, 446 F.2d 907 (1971), rev'd on other grounds sub nom. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972) (stating factor (2) as "be vexatious or oppressive"). The Second Circuit also considers a fifth factor—whether allowing the foreign suit to proceed would "'result in delay, inconvenience, expense, inconsistency, or a race to judgment.'" *Software AG*, 323 Fed.Appx. at 12 (2d Cir. 2009) (quoting *Karaha Bodas Co.*, 500 F.3d at 119 (2d Cir. 2007)). If any of the four elements is present, an anti-suit injunction may be proper.

Lastly, the district court must consider principles of comity. *See O'Keefe v. Chisholm*, 769 F.3d 936, 937 (7th Cir. 2014) ("[P]rinciples of 'equity, comity, and federalism' determine whether [anti-suit injunctions] are appropriate."); *Paramedics*, 369 F.3d at 654–55 ("Principles of comity

4

weigh heavily in the decision to impose a foreign anti-suit injunction."); *Karaha*, 335 F.3d 357, 366 (5th Cir. 2003) ("When a preliminary injunction takes the form of a foreign antisuit injunction, we are required to balance domestic judicial interests against concerns of international comity."); *see also E. & J. Gallo Winery*, 446 F.3d at 991 (stating that "the impact on comity" must be "tolerable"). This is because even though an "injunction operates only against the parties, and not directly against the foreign court, ... such an order effectively restricts the jurisdiction of the court of a foreign sovereign." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir.1987) (citing *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841 (1849); *United States v. Davis*, 767 F.2d 1025, 1038 (2d Cir. 1985)). Because of this effect, "an anti-foreign-suit injunction should be 'used sparingly', *U.S. v. Davis*, 767 F.2d at 1038, and should be granted 'only with care and great restraint.' *Canadian Filters (Harwich) v. Lear–Siegler*, 412 F.2d 577, 578 (1st Cir. 1969)." *China Trade*, 837 F.2d at 36 (citing *Laker Airways*, 731 F.2d at 927; *Compagnie Des Bauxites De Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 (3rd Cir.1981)); *see E. & J. Gallo Winery*, 446 F.3d at 989 ("[T]he power to enjoin [the parties] from proceeding with an action in the courts of a foreign country ... should be used sparingly.").

### III. DISCUSSION

The Court will address the relevant factors to this case in turn. For the reasons below, the Court finds that factors support the issuance of an anti-suit injunction in this matter. Further, issues of international comity are lessened in this case as there is currently no suit in a foreign jurisdiction.

#### A. Same Parties and Issues

First, the court resolves the threshold considerations of whether the parties and issues are the same. Defendants argue that Plaintiffs threaten to re-arrest the same ship for the same claims that have already been decided by this Court and affirmed by the Fourth Circuit. ECF No. 65 at 8.

Plaintiff argues that its demand letter to Defendant and subsequent communication does not attempt to dispute or collaterally attack the judgment of this Court. ECF No. 70 at 1-6. Plaintiff further argues that the threshold requirements are not met because the only parties to the underlying action were Sing Fuels and the Vessel *in rem*. *Id.* at 7. Moreover, Plaintiff states that in their correspondence they expressly acknowledge that they "do not dispute that the Vessel has been arrested in the United States with the intention to enforce a maritime lien under US law" and "that this effectively ends any discussion as to whether a maritime lien attaches to the Vessel under US law." ECF No 65. at Ex. 3. Finally, Plaintiff argues that the Court only decided the underlying case *in rem* and Plaintiffs have the legal right to pursue claims *in personam*.

The first threshold requirement is that the parties are the same in both matters. To satisfy this requirement, the parties need not be identical. *See Paramedics*, 369 F.3d at 652–53. This requirement is met if the parties are "sufficiently similar." *Id.* Here, the underlying case involved the Defendant Vessel, Autumn Harvest, and Sing Fuels and concerned whether payment was due for a supply of bunker fuel in South Africa in July 2019. In issuing the same demand letter from 2019 to the Defendant, Plaintiff stated: "Please note that we are instructed to pursue the claim by way of arrest where the Vessel or any of its sister ships can be found unless liability is acknowledged by your company and payment is duly made." ECF No. 65 at Exhibit 1. Whether the parties are identical is immaterial as Plaintiff explained that it was "monitoring the movements of the Vessel with the intent of enforcing the claim directly against the ship once she arrives in a jurisdiction which Sing Fuels deems favourable." *Id.* Defendant is an indispensable party to potential litigation meaning the parties are sufficiently similar.

The second threshold factor requires the resolution of the case before this Court to be dispositive of the action to be enjoined. In determining whether a previous action is dispositive of

a subsequent one, a court "must determine the substance of the case before the enjoining court." *Karaha Bodas,* 500 F.3d at 121 (citation omitted). A court must also examine whether the judgment sought to be protected was "dispositive" of the subsequent action. *Id.* There is no requirement that the two actions be identical. *See id.* at 121–22; *Paramedics*, 369 F.3d at 653; *see also Sanofi–Aventis Deutschland GmbH v. Genentech, Inc.*, 716 F.3d 586, 591 (Fed.Cir.2013); Applied Med. Distribution Corp. v. Surgical Co. BV, 587 F.3d 909, 914 (9th Cir.2009).

Here, Plaintiff threatens to litigate the same issue as Plaintiff explained that "there were only two suppliers of fuel at one point in time" so the only transaction at issue is "the fuel that was supplied in South Africa." TR. 14: 13-20. Plaintiff maintains that a direct contractual relation exists "between owners and Sing Fuels in relation to the supply." ECF No. 65 Ex 3. Plaintiff further explained that foreign jurisdictions "provide that a contractual claim against … the charterers, for a failure to pay gives rise to the ability to seize the vessel, even though it is not owned by the party that contracted for the fuel." Tr. 15:15-21. Plaintiff explained that they were actively monitoring the Vessel as "the Vessel is currently en route Mozambique, which is a jurisdiction which entitles Sing Fuels to enforce the unpaid claim against the Vessel." ECF No. 65 at Exhibit 1. Through Plaintiff's correspondence with Defendant, it is clear that Plaintiff seeks to relitigate the same issues in a foreign court hoping to find a favorable judgment.

The judgment entered in the instant action is dispositive of the claim that Plaintiff threatens to pursue. At the hearing Plaintiff conceded that both actions are premised on "only two suppliers of fuel at one point in time," so litigation would be "about the fuel that was supplied in South Africa." TR. 14: 13-20. In both actions, Plaintiff seeks to seize the Vessel and pursue the claim in a favorable jurisdiction "unless liability is acknowledged by [Defendant] and payment is duly made." ECF No. 65 at Exhibit 1. Through subsequent litigation, Plaintiff seeks to unwind the

7

judgment entered against it in the underlying litigation. *In Sing Fuels Pte. Ltd. v. M/V LILA SHANGHAI*, the Court found the fuel broker, was not an agent for the charterers, MedMar Inc., "and, thus, could not establish the maritime line on behalf of Plaintiff." 534 F.Supp.3d 551 (E.D. VA 2021). The Court further found Defendant "demonstrated that there [was] no privity of contract between plaintiff and defendant which holds defendant liable for a maritime lien." *Id.* With the final judgment in this case, the Court not only assessed Plaintiff's argument regarding the relationship between the charterers and the Vessel but also found that there was no contractual relationship between Plaintiff and Defendant.

### B. Vexatious Litigation

Second, the Court considers four factors to determine the effect the foreign suit would have if the Motion were denied. Defendant argues that a second suit would prove vexatious and oppressive as Plaintiff only threatened to bring an additional suit because it lost its first suit. ECF No. 64 at 8. Plaintiff argues that Defendant has not met the threshold requirements for an anti-suit injunction because there is no pending action in a foreign jurisdiction between the parties. ECF No. 70 at 6-7.

Parallel proceedings are common, and an anti-suit injunction is not appropriate every time parallel proceedings may occur and litigation in the U.S. court concludes first. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 928 n.54 (D.C. Cir. 1984). This is not a situation where two courts are proceeding to separate judgments simultaneously under one cause of action. Rather, the sole purpose of Plaintiff's threatened litigation is to evade the ruling of this Court. Plaintiff seeks to seize the Vessel and pursue the claim in a favorable jurisdiction "unless liability is acknowledged by [Defendant] and payment is duly made." ECF No. 65 at Exhibit 1. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 928 n. 54 (D.C. Cir.

1984) ("[A] showing of harassment, bad faith, or other strong equitable circumstances should ordinarily be required" for a district court to impose an anti-suit injunction in order to protect an existing judgment).

Here, Plaintiff has not only waited to file a claim in a foreign jurisdiction until after the underlying case has been fully adjudicated but also explicitly stated that they will continue to pursue claims directly against the Vessel in a jurisdiction it deems favorable. In correspondence with Defendant, Plaintiff explained that it was "monitoring the movements of the Vessel with the intent of enforcing the claim directly against the ship once she arrives in a jurisdiction which Sing Fuels deems favourable." ECF No. 65 at Exhibit. 1. Plaintiff further "advised that the Vessel is currently en route Mozambique, which is a jurisdiction which entitles Sing Fuels to enforce the unpaid claim against the Vessel." *Id.* In multiple correspondents Plaintiff explained that they would continue to pursue the claim already litigated in front of this Court "until the Vessel is arrested in a favourable jurisdiction, and payment is received in full." ECF No. 65. at Exhibit 3.

A court will issue an antisuit injunction only when the strongest equitable factors favor its use. *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984). In the underlying litigation Plaintiff chose to avail itself of jurisdiction in the United States; appeared in an action it brought before this Court; engaged in extensive discovery pursuant to the directives of this Court; went to trial; lost the trial; lost an appeal and only then, threatened to bring identical claims in a more favorable jurisdiction. Moreover, Plaintiff continues to monitor the whereabout of the Vessel, planning to arrest the Vessel to relitigate the same issue decided by this Court. Plaintiff not only recycles the same demand letter but peddles the same arguments, brazenly stating that they are simply looking for a favorable jurisdiction. This type of "absurd duplication of effort" would result in unwarranted inconvenience, expense, and vexation. *See Kaepa, Inc. v. Achilles*

*Corp.*, 76 F.3d 624, 627 (5th Cir. 1996). Accordingly, the Court finds that the relevant factors and equity favors granting the injunction.

### C. International Comity

Third, the Court considers principles of comity. Defendant argues that concerns for comity are substantially less in this case as Plaintiff have not commenced a suit in a foreign jurisdiction. ECF No. 64 at 10-11. Plaintiff argues that it should be allowed to pursue claims against Defendant in the future because this Court only held that under U.S. law, Plaintiff failed to carry its burden to establish the existence of a maritime lien by a preponderance of the evidence. ECF No. 70 at 7-9. Plaintiff argues that the Court did not resolve any other legal issues regarding this matter. *Id.*

Comity stands for the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum. *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984). When possible, the decisions of foreign tribunals should be given effect in domestic courts since recognition fosters international cooperation and encourages reciprocity. *Id.* The antisuit injunction in this case is purely defensive — it seeks only to preserve the ruling made by this Court. This judgment would not interfere with a foreign jurisdictions judgment or policy. Since Plaintiff has not filed a suit in a foreign jurisdiction, the Court finds this matter presents no issues of international comity.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTED** the Motion for Post-Judgment Anti-Suit Injunction. ECF No. 72. Plaintiff is hereby enjoined from commencing an *in rem* or *in personam* suit against the Defendant Vessel or owners of the Vessel.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion to counsel and parties of record.

**IT IS SO ORDERED.**

Newport News, Virginia
May /7, 2023

Raymond A. Jackson
United States District Judge